UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

306 WALL STREET OWNERS, LLC *et al.*,

        Plaintiffs,

   -v-                                     1:25-CV-1815 (AJB/PJE)

THE CITY OF KINGSTON, NEW YORK *et al.*,

        Defendants.

**Hon. Anthony Brindisi, U.S. District Judge:**

**DECISION and ORDER**

**I.      INTRODUCTION**

On December 29, 2025, plaintiffs 306 Wall Street Owners, LLC, 311 Wall Street, LLC, 312 Wall Street Owners, LLC, 314 Wall Street, LLC, 323 Wall Street Owners, LLC, 328 Wall Street, LLC, 44 North Front Street Owner, LLC, and William Gottlieb Management Co., LLC, (collectively "plaintiffs") filed this 42 U.S.C. § 1983 action against defendants the City of Kingston, New York (the "City"), the City of Kingston Common Council (the "Common Council"), and Steven T. Noble, individually and in his official capacity as Mayor of the City ("Mayor Noble") (collectively "defendants").  Dkt. No. 1.

Plaintiffs are New York domestic limited liability companies that own commercial and mixed-use buildings in the City's historic district.  Dkt. No. 1.  In short, plaintiffs allege that defendants violated their constitutional rights by undertaking a plan to demolish a canopy structure that had been physically adjoined to the fronts of their buildings for decades.  *Id.*

On January 7, 2026, plaintiff filed an emergency motion for a temporary restraining order or, alternatively, for the issuance of a preliminary injunction halting the City's imminent

demolition efforts.  Dkt. No. 10-14.  Two days later, defendants opposed, and the Court held a video hearing on plaintiffs' motion.  Dkt. Nos. 15–16.  After hearing argument from the parties, the Court denied plaintiffs' emergency request for a temporary restraining order and set an expedited briefing schedule on plaintiffs' motion for a preliminary injunction.  Dkt. Nos. 16, 30.

Defendants opposed plaintiffs' preliminary injunction motion and cross-moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. Nos. 19–20. The parties' motions have been fully briefed, Dkt. Nos. 23–29,[1] and will be considered on the basis of the submissions.

## II.     BACKGROUND

Plaintiffs own commercial and mixed-use buildings in the historic Stockade Area of the City (the "Stockade District").  Dkt. No. 1 ("Compl.") ¶ 38.  In 1969, renowned artist John Pike proposed an urban renewal plan for the Stockade District (the "Pike Plan").  *Id.* ¶ 32.  As part of the Pike Plan, the City affixed a 1,700-foot-long "unbroken line of colonial revival-style wooden awnings," (the "Canopy") to more than forty buildings in the Stockade District, including plaintiffs'.  *Id.* ¶¶ 2, 33.  As part of the Pike Plan, plaintiffs' predecessors and neighboring property owners entered into agreements with the City granting the City easements (the

---

[1] A week after plaintiffs filed their reply in further support of their motion for a preliminary injunction and in opposition to defendants' cross-motion to dismiss, *see* Dkt. No. 23, defendants filed an unauthorized reply in further support of their motion to dismiss, Dkt. No. 24.  *See* L.R. 7.1(c) ("The cross-moving party may not reply . . . without the Court's prior permission.").  Plaintiffs moved to strike defendants' unauthorized reply.  Dkt. No. 25.  In the weeks that followed, the parties inundated the docket with unauthorized supplemental filings and responses: On February 17, 2026, plaintiffs filed a notice of supplemental authority related to their motion for a preliminary injunction.  Dkt. No. 26.  On February 27, 2026, defendants filed a letter motion alerting the Court to changed circumstances relevant to the pending motions.  Dkt. No. 27.  The same day, plaintiffs filed a response to defendants' notice of changed circumstances, Dkt. No. 28, which they supplemented days later with another submission, Dkt. No. 29.

"[T]he Court has discretion to consider documents filed in violation of procedural rules." *Anghel v. New York State Dep't of Health*, 947 F. Supp. 2d 284, 293 (E.D.N.Y. 2013), *aff'd*, 589 F. App'x 28 (2d Cir. 2015) (summary order). Because both parties have made unauthorized submissions in violation of the Local Rules, the Court exercises its discretion and considers the supplemental filings, but only insofar as they are relevant to the pending motions.

"Easements") to access their properties for the purpose of constructing, maintaining, and repairing the Canopy. *Id.* ¶ 35. Under the Easements, the City was responsible for maintaining and repairing the Canopy, subject to repair and maintenance assessments imposable against the property owners. *Id.* ¶ 36.

"By the early 2020s, the City had ceased performing required maintenance on the [C]anopy." Compl. ¶ 42. Consequently, structural components of the Canopy deteriorated. *Id.* ("[F]lashing leaked, enclosures failed, columns weakened, and water infiltration caused injury to [plaintiffs'] buildings."). At some point, one of the load-bearing pillars supporting the Canopy failed, and "[t]he City replaced it with a temporary metal support." *Id.*

First in November 2023, then again in February 2024, plaintiffs served notices of claim on the City, pursuant to New York General Municipal Law § 50-e, advising the City of their intent to sue based on the City's failure to maintain the Canopy. Compl. ¶ 43. In the months that followed, Mayor Noble "launched a public campaign directly attacking" plaintiff William Gottlieb Management Co., LLC ("Gottlieb").[2] *Id.* "In subsequent press releases, social-media posts, radio interviews, and official City communications, [Mayor Noble] repeatedly accused [p]laintiffs of 'harassing mom-and-pop businesses,' 'draining taxpayer dollars,' 'burying the City in lawsuits,' and 'using deep pockets to break the City.'" *Id.* ¶ 44. Mayor Noble also encouraged members of the public to overwhelm Gottlieb's New York City headquarters with calls and letters demanding that plaintiffs stop suing the City. *Id.* ¶ 46.

"[S]hortly after [p]laintiffs complained [about] the City's negligent upkeep and maintenance [of the Canopy]," the City evinced its intent, "through unambiguous legislative

---

[2] According to plaintiffs, Mayor Noble also publicly attacked an individual identified as "Neil Bender." Compl. ¶¶ 43–45. Though plaintiffs' complaint does not state Mr. Bender's relationship to plaintiffs or this action, their allegations suggest that he is a member or "affiliate" of one or more of plaintiffs. *Id.*

resolutions, press releases, Mayor's letters, and other public statements," to "abandon its obligations under the [Easements], including any duty to maintain the [C]anopy." Compl. ¶ 39. Around the same time, Mayor Noble "renewed his advocacy for the complete removal of the [Canopy], shifting the responsibility of its consequences onto the property owners." *Id.* ¶ 48.

On August 19, 2024, plaintiffs commenced a putative class action against the City in New York State Supreme Court, Ulster County, seeking a judgment declaring that the Canopy, as part of plaintiffs' properties, could not be unilaterally removed by the City and enjoining the City from legislatively authorizing the demolition of the Canopy without first obtaining approval from the City's Historic Landmarks Preservation Commission. *306 Wall Street Owners et al. v. City of Kingston*, Index No. EF2024-2258, Doc. No. 2 (N.Y. Sup. Ct. 2024). In response, the City moved to dismiss plaintiffs' putative class complaint. *Id.*, Doc. Nos. 53–54.

On December 24, 2024, with the state-court action pending, the State Office of Parks, Recreation and Historic Preservation (the "SHPO") determined, pursuant to a petition filed by plaintiffs, "that the [Canopy] was individually eligible for listing on the State and National Registers of Historic Places." Compl. ¶ 60. The SHPO also provided comments to the City, pursuant to the State Environmental Quality Review Act ("SEQRA"), concerning the impact that the proposed demolition would have on historic architectural resources. *Id.*, Ex. C, Dkt. No. 1-3 at 1. Specifically, the SHPO recommended that the City look into the feasibility of alternatives, such as partial demolition, that could minimize harm to the Canopy and requested that the City submit additional documentation clarifying the purpose and need for the proposed demolition. *Id.* The City never provided the SHPO with the requested documentation. *Id.* ¶ 65.

On January 27, 2025, Ulster County Supreme Court Justice David M. Gandin granted the City's motion to dismiss plaintiffs' class complaint in its entirety, finding that the Canopy was

City property, and that plaintiffs had abandoned their other claim. *See 306 Wall Street Owners et al. v. City of Kingston*, Index No. EF2024-2258, Doc. No. 88 (N.Y. Sup. Ct. 2024). Plaintiffs appealed the trial court's determination that the Canopy was City property. *Id.*, Doc. No. 92. Months later, the Appellate Division affirmed the lower court's decision and entered a declaratory judgment in the City's favor. *See 306 Wall St. Owners, LLC v. City of Kingston*, 241 A.D.3d 1692, 1697–98 (3d Dep't 2025).

Shortly after the trial court dismissed plaintiff's class action complaint, the Common Council adopted a resolution approving the issuance of a City bond in the amount of $1.2 million to fund the demolition project. Compl. ¶ 23. In response, plaintiffs filed a petition, pursuant to Article 78 of the New York Civil Practice Law and Rules, seeking to annul the funding resolution and arguing, *inter alia*, that the Common Council's SEQRA review was procedurally deficient and that their determination that the demolition would have no significant environmental impact was arbitrary and capricious. *See 306 Wall Street Owners et al. v. City of Kingston et al.*, Index No. EF2025-723, Doc. No. 1 (N.Y. Sup. Ct. 2025).

Three weeks later, plaintiffs filed a third lawsuit against the City in New York State Supreme Court, Ulster County, asserting claims for negligence and breach of contract based on the City's failure to maintain the Canopy. *See* Dkt. No. 10-1 ("Hurst Decl.") ¶ 4; *306 Wall Street Owners et al. v. City of Kingston*, Index No. EF2025-691 (N.Y. Sup. Ct. 2025). That case remains pending. Hurst Decl. ¶ 4.

On March 4, 2025, the Common Council, upon Mayor Noble's request, adopted another funding resolution, again authorizing a $1.2 million expenditure for demolition costs, but this time to be paid out from the City's general fund, rather than by municipal bond. Compl. ¶¶ 23–24. Days later, plaintiffs filed another Article 78 petition challenging the second funding

resolution. *306 Wall Street Owners et al. v. City of Kingston et al.*, Index No. EF2025-812 (N.Y. Sup. Ct. 2025). Plaintiffs' Article 78 petitions were consolidated into a single Article 78 proceeding later that month. *306 Wall Street Owners et al. v. City of Kingston et al.*, Index No. EF2025-723, Doc. Nos. 25 (N.Y. Sup. Ct. 2025).

As the year went on, the City continued to advance towards demolition. On October 24, 2025, the City put out a request for proposals ("RFP"), seeking contractor bids for the Canopy demolition project. Compl. ¶ 67. The RFP provided that the contractor would be authorized to enter private buildings, including plaintiffs', and remove materials integrated into those buildings as part of the Canopy removal process. *Id.* ¶ 70. The RFP did not contemplate an access agreement between the contractor and plaintiffs or other affected building owners, *id.* ¶ 72, nor did it include any "requirement for restoration of private facades, roofs, cornices, lintels, or storefront systems from which" the Canopy would be removed. *Id.* ¶ 73. Notwithstanding these alleged deficiencies, the City "awarded a demolition-only contract to a low bidder for approximately $869,000, which include[d] none of the required access agreements, restoration, preservation, masonry, hazardous interior, or sidewalk-repair work." *Id.* ¶ 80.

On December 2, 2025, the City sent a letter to plaintiffs and other affected property owners, offering to enter into settlement agreements in advance of the demolition, which was scheduled to begin in January 2026. Compl. ¶ 84. The City's proposed settlement agreement was modeled after one it had reached with another affected property owner months earlier. *Id.* ¶ 122.

On December 29, 2025, plaintiffs filed this § 1983 action against defendants. *See generally*, Compl. A week later, plaintiffs filed an emergency motion for a temporary restraining order enjoining the impending demolition. Dkt. No. 10. The Court denied plaintiffs' request

after a hearing, Dkt. No. 16, and the City's contractor "began mobilization for the [C]anopy deconstruction" the following week.  Dkt. No. 19-1 ("Schultheis Decl.") ¶ 6.  By January 23, 2026, approximately 400 linear feet of the Canopy had been removed.  *Id.* ¶ 11.

On February 27, 2026, defendants informed the Court that the City's contractor had completed the demolition of the Canopy, and that the City had been served with a state-court summons and complaint "in a new lawsuit commenced by plaintiffs and an affiliated corporation, 317 Wall Street Owners, LLC."  Dkt. No. 27.  According to the complaint, plaintiffs' latest lawsuit demands a judgment declaring that the Easements between the City and plaintiffs were extinguished by operation of law and abandoned by the City upon its commencement of the demolition.  *See* Dkt. No. 29; *see also* 306 *Wall Street Owners, LLC et al. v. City of Kingston et al.*, Index No. EF2026-618, Doc. No. 2 (N.Y. Sup. Ct. 2026).  The same day, plaintiffs advised the Court that defendants had not restored plaintiffs' buildings to their pre-existing conditions and that the demolition had "left a continuous band of exposed connections, cut flashing lines, disturbed anchorage points, and temporary barrier material across multiple parcels, creating pathways for water infiltration, freeze-thaw damage, and the progressive loss of original fabric."  *Id.*

## III.   DISCUSSION

Plaintiffs' complaint asserts four § 1983 claims against defendants: (1) a Fifth Amendment takings claim; (2) a Fourteenth Amendment "class of one" equal protection claim; (3) a First Amendment retaliation claim; and (4) a Fourteenth Amendment substantive due process claim.  Dkt. No. 1 ("Compl.") ¶¶ 97–166.  Plaintiffs' complaint also asserts claims under

state law for substantive due process and inverse condemnation, *id.* ¶¶167–78.[3]  Plaintiffs have moved for an order preliminarily enjoining defendants from entering their properties, demolishing or removing the Canopy, or otherwise physically occupying or altering plaintiffs' buildings.  Dkt. No. 10-14 ("Pls.' Mem.") at 4.  Defendants opposed plaintiffs' motion and cross-moved to dismiss plaintiffs' complaint.  Dkt. No. 19 ("Defs.' Mem.") at 6.

### A. Preliminary Injunction

Plaintiffs have moved for a preliminary injunction "prohibiting the City from awarding or performing any demolition or canopy-removal contract, and from undertaking any physical work affecting [p]laintiffs' buildings or related subsurface areas."  Dkt. No. 23 ("Pls.' Reply") at 31.  Defendants oppose plaintiffs' motion.  Defs.' Mem. at 23–25.

### 1. Legal Standard

"A preliminary injunction is an 'extraordinary and drastic remedy' that 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  *Gov't Emps. Ins. Co. v. Patel*, 166 F.4th 280, 290 (2d Cir. 2026) (quoting *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac., P.C.*, 120 F.4th 59, 79 (2d Cir. 2024)).  To obtain a preliminary injunction, plaintiffs "must establish that [they] [are] likely to succeed on the merits, that [they] [are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

---

[3] Plaintiffs' complaint also asserts a standalone claim identified only as "injunctive relief."  Compl. ¶¶ 179–81.  But injunctive relief is a remedy, not an independent cause of action.  *See Williams v. Walsh*, 558 F.2d 667, 670–71 (2d Cir. 1977) ("But, most definitely, 'the cause of action is something distinct from the remedy or the relief sought.'" (quoting *Dennison v. Payne*, 293 F. 333, 344 (2d Cir. 1923)).  Plaintiffs' injunctive relief "claim" is better characterized as a prayer for injunctive relief in connection with their federal- and state-law causes of action.  Accordingly, to the extent that plaintiffs' complaint asserts an independent claim for injunctive relief, it is dismissed.

"In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)). To make this assessment, courts may look beyond the pleadings and consider other record evidence, including hearsay evidence. *Mullins v. City of N.Y.*, 626 F.3d 47, 52 (2d Cir. 2010).

## 2. Analysis

Plaintiffs argue that they are entitled to a preliminary injunction because the demolition of the Canopy will irreparably harm plaintiffs' constitutionally protected property interests. Pls.' Mem. at 11–13. In opposition, defendants argue that plaintiffs' motion has been rendered moot by the completion of the demolition. Dkt. No. 27. The Court agrees with defendants.

In most cases, "[t]he occurrence of the action sought to be enjoined . . . moots the request for preliminary injunctive relief because th[e] Court has no effective relief to offer once the action has occurred." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (Sotomayor, J.) (internal quotation omitted). "A possible exception to this rule exists, however, where a court can feasibly *restore* the status quo." *Id.* at 509 (emphasis in original).

The parties do not appear to dispute that the action plaintiffs sought to enjoin, *i.e.*, the demolition of the Canopy, has occurred, *see* Dkt. Nos. 27–29, and because there is no indication in the record that restoration of the status quo, *i.e.*, reconstruction of the Canopy, is feasible, *see* Dkt. No. 30 ("Tr.") at 9 ("[W]e can't get the canopy back and we can't get the historic character of the buildings back."), no exception to the general mootness rule applies. Accordingly,

plaintiffs' request to preliminarily enjoin the demolition or removal of the Canopy must be denied as moot.[4]

Notwithstanding this conclusion, plaintiffs maintain that effectual relief is still available because the Court has "the power to require the stabilization, sealing, and historically appropriate restoration of the building envelopes, to prohibit further unconsented physical work affecting those façades, and to preserve the existing condition of the properties while the parties' rights are adjudicated."  Dkt. No. 28 at 2.

To be sure, courts have "discretion to fashion such a preliminary injunction as may best approximate past positions in the light of the basic rights of the parties."  *Unicon Mgmt. Corp. v. Koppers Co.*, 366 F.2d 199, 204 (2d Cir. 1966).  But plaintiffs have not demonstrated that they are entitled to the extraordinary relief that they seek; namely, they have failed to establish that they are likely to suffer irreparable harm in the absence of the requested relief.

"[A] showing of probable irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction[.]'"  *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (quoting *Bell & Howell: Mamiya Co. v. Masel Co. Corp.,* 719 F.2d 42, 45 (2d Cir. 1983)) (internal quotation omitted).  "Irreparable harm must be shown by the moving party to be imminent, not remote or speculative . . . and the alleged injury must be one incapable

---

[4] Even if the demolition had not been completed, plaintiffs would not be entitled to an order preliminarily enjoining the demolition.  Plaintiffs' request for a preliminary injunction is premised on their Fifth Amendment takings claim. *See* Pls.' Mem. at 6 ("Plaintiffs therefore seek immediate relief to preserve the status quo and prevent an unconstitutional taking while this Court adjudicates their claims.").  Where state law provides an adequate provision for obtaining just compensation, injunctive relief is foreclosed as a remedy for a takings claim.  *See Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 201 (2019) ("As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking."); *see also JWJ Indus., Inc. v. Oswego Cnty.*, 538 F. App'x 11, 13 (2d Cir. 2013) (summary order) (noting that "New York provides an adequate procedure for seeking just compensation for the sort of taking at issue in this case"); *Livant v. Clifton*, 334 F. Supp. 2d 321, 326 (E.D.N.Y. 2004) (same), *aff'd,* 272 F. App'x 113 (2d Cir. 2008) (summary order).

of being fully remedied by monetary damages." *Reuters Ltd.*, 903 F.2d at 907 (internal citation omitted).

Plaintiffs have not established that, due to the present condition of their buildings, they are likely to suffer imminent irreparable harm that cannot be remedied by monetary relief. *See* Dkt. No. 28. Plaintiffs' supplemental filing indicates that the City's contractor has affixed protective coverings to their buildings, and that the City's contractor will be responsible for maintaining those coverings until August 2026. Dkt. No. 28 at 1–3. Even assuming that plaintiffs had shown that the present condition of their buildings would "increase[ ] the difficulty of true restoration" in the future, *id.* at 2, that fact alone is insufficient to establish a likelihood of irreparable harm. Plaintiffs' speculative assertions that the City's protective coverings create "pathways for water infiltration, freeze-thaw damage, and the progressive loss of original fabric," *id.* at 2, are similarly insufficient to establish a likelihood of irreparable harm that is both actual and imminent. In sum, plaintiffs have not carried their burden of establishing that they will likely suffer irreparable harm in the absence of the relief sought.

Plaintiffs' supplemental authority, *see* Dkt. No. 26 (citing *City of Phila. v. Burgum et al.*, 2026 WL 431943 (E.D. Pa. Feb. 16, 2026) ("*Burgum*")), does not alter this conclusion. In *Burgum*, the National Parks Service (the "NPS") removed educational panels, displays, and video exhibits that commemorated the lives of people enslaved by President George Washington from Independence National Historical Park in Philadelphia, Pennsylvania. *Burgum*, 2026 WL 431943 at *1. In response, the City of Philadelphia sought a preliminary injunction requiring the NPS to re-install the removed materials. *Id.* The court granted the City of Philadelphia's motion and ordered the NPS to reinstall all removed panels, displays, and video exhibits. *Burgum*, 2026 WL 431943 at *19. In doing so, the trial court found that the City met its burden of showing a

sufficient likelihood of irreparable harm because, among other things, the removal (and ensuing absence) of the displays from the park "irrevocably degrade[d] the public's trust in the government," "deprive[d] the public of educational opportunities designed to be free and accessible," and "undermine[d] state sovereignty in favor of an unchecked rewriting of th[e] country's history." *Id.* at *18.  The court also noted that the City had spent years and millions of dollars' worth of public funds engaging in collaborative efforts with the federal government to develop and improve the park.  *Id.* at *1–5, 17.

As noted *supra*, there is no indication in the record that the Canopy could be reinstalled at this point, *see* Tr. at 9 ("[W]e can't get the canopy back and we can't get the historic character of the buildings back."), and unlike the City of Philadelphia, plaintiffs do not claim to have invested decades of time and millions of dollars into the Canopy.  On the contrary, plaintiffs admit that the Canopy had fallen into a state of disrepair.  Compl. ¶ 42.  Most importantly, the City's demolition of the Canopy does not implicate the same concerns regarding public trust, historical integrity, or state sovereignty as the removal of the historical displays did in *Burgum*.

While the Court appreciates the historical and aesthetic value of the Canopy to the Stockade District, Compl. ¶¶ 31–34, the record evidence does not support plaintiffs' contention that the demolition of the Canopy created a likelihood of irreparable harm akin to that at issue in *Burgum*—*i.e.*, the erasure of centuries of historical narratives, including "the realities of founding-era slavery." *Burgum*, 2026 WL 431943, at *18.

In all, plaintiffs have not demonstrated that they are entitled to the extraordinary relief that they seek.  Accordingly, their motion for a preliminary injunction must be denied.

**B. Motion to Dismiss**

Turning to defendants' motion to dismiss, defendants have moved to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that "[m]ootness, claim preclusion, collateral estoppel, and abstention principles compel dismissal" of plaintiffs' complaint. Defs.' Mem. at 6. Alternatively, defendants argue that plaintiffs have not plausibly alleged their § 1983 claims. *Id.* Plaintiffs oppose defendants' motion. *See generally*, Pls.' Reply.

When "faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) [a court] must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Kumpf v. N.Y. State United Tchrs.*, 642 F. Supp. 3d 294, 304 (N.D.N.Y. 2022) (Sannes, C.J.).

**1. Rule 12(b)(1)**

Defendants have moved to dismiss the complaint, in part, on mootness and abstention grounds, both of which relate to the Court's jurisdiction. Accordingly, Rule 12(b)(1) governs the analysis of those arguments.

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure a party may move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Id.*

"A Rule 12(b)(1) motion . . . may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "When [a] Rule 12(b)(1) motion is facial, [it is]

based solely on the allegations of the complaint . . . and [any] exhibits attached to it." *Id.* at 57. "Alternatively, a defendant [may] make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* In opposition to a fact-based 12(b)(1) motion, "plaintiffs must 'come forward with evidence of their own to controvert that presented by the defendant' . . . or [they] may instead 'rely on the allegations in the [p]leading[,] if the evidence proffered by the defendant . . . does not contradict plausible allegations that are themselves sufficient to show standing.'" *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*, 822 F.3d at 56).

### i. Mootness

First, defendants argue that the Court should "dismiss this case as moot" because plaintiffs' claims relate to the demolition of the Canopy, which has been completed. Defs.' Mem. at 14; Dkt. No. 27 at 1. In opposition, plaintiffs maintain that the case is not moot because the Court can still grant plaintiffs meaningful relief. Pls.' Reply at 7, 10. The Court agrees with plaintiffs.

"'If an intervening circumstance deprives the plaintiff of a "personal stake in the outcome of the lawsuit," . . . the action can no longer proceed and must be dismissed as moot.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477–478 (1990)). But "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Campbell-Ewald Co.*, 577 U.S. at 161 (internal quotation omitted). "For better or worse, nothing so shows a continuing stake in a dispute's outcome as a demand for dollars and cents." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377 (2019); *see also Stokes v. Vill. of Wurtsboro*, 818 F.2d 4, 6 (2d Cir. 1987) (noting that viable

"[c]laims for damages or other monetary relief automatically avoid mootness") (internal quotation omitted).

Plaintiffs' complaint asserts § 1983 and state law claims for compensatory and punitive damages.  Compl. ¶¶ 97–178.  Because plaintiffs' complaint demands monetary damages as a form of retrospective relief for alleged past violations of their constitutional rights, there is a live controversy that has not been rendered moot by the demolition of the Canopy.  Accordingly, the Court denies defendants' motion to dismiss the complaint as moot.

### ii.  Abstention

Next, defendants argue that, even if there is a live controversy between the parties, the Court should nevertheless abstain from exercising jurisdiction over plaintiffs' claims based on the abstention principles set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  Defs.' Mem. at 18–19.  In response, plaintiffs maintain that *Colorado River* abstention is unwarranted.  Pls.' Reply at 30–31.  Again, the Court agrees with plaintiffs.

"'The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction.'"  *Niagara Mohawk Power Corp.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.,* 239 F.3d 517, 522 (2d Cir. 2001); *see also Colorado River*, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule.").  "[A]bstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction."  *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (quoting *Colorado River*, 424 U.S. at 817).  "In *Colorado River,* the Supreme Court held that . . . in certain . . . 'exceptional circumstances,' . . . a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would

conserve judicial resources." *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (quoting *Colorado River*, 424 U.S. at 813, 817–18).

At the time defendants filed their motion to dismiss, plaintiffs had one action pending in state court. *See 306 Wall Street Owners et al. v. City of Kingston*, Index No. EF2025-691 (N.Y. Sup. Ct. 2025). Since then, plaintiffs have filed another. *See* Dkt. Nos. 27, 29; *306 Wall Street Owners, LLC et al. v. City of Kingston et al.*, Index No. EF2026-618 (N.Y. Sup. Ct. 2026). The Court will address whether either state court proceeding would justify abstention under *Colorado River*.

"[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). As the Second Circuit has explained, "[f]ederal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).

Plaintiffs' earlier-filed action, brought by all plaintiffs except Gottlieb, asserts state-law negligence and breach-of-contract claims for damages against the City arising out of the City's alleged failure to maintain the Canopy. *306 Wall Street Owners et al. v. City of Kingston*, Index No. EF2025-691, Doc. No. 1 (N.Y. Sup. Ct. 2025). The later-filed action, brought by non-party 317 Wall Street Owners, LLC, and all plaintiffs except Gottlieb, asserts state-law claims to quiet title and to enjoin the City, Mayor Noble, and the City's contractor from entering upon, occupying, or otherwise trespassing on plaintiffs' properties pursuant to the Easements. *See* Dkt. No. 29; *306 Wall Street Owners, LLC et al. v. City of Kingston et al.*, Index No. EF2026-618, Doc. No. 1 (N.Y. Sup. Ct. Ulster Cnty. 2026).

As defendants point out, the state and federal proceedings involve overlapping parties and relate broadly to the Canopy and the Easements. But that fact alone will not render proceedings "parallel" for *Colorado River* purposes. *See Mochary v. Bergstein*, 42 F.4th 80, 86 (2d Cir. 2022) ("Mere 'commonality in subject matter' does not render actions parallel." (quoting *Dittmer,* 146 F.3d at 118)); *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986) ("Where, as here, a federal court properly has subject matter jurisdiction, it has a 'virtually unflagging obligation' to exercise that jurisdiction, even if an action concerning the same matter is pending in state court." (quoting *Colorado River,* 424 U.S. at 817–18)).

First off, plaintiffs' later-filed quiet title action is not a parallel proceeding. In that action, plaintiffs assert only state-law claims and demand only forward-looking equitable relief, including a declaration of the parties' prospective rights under the Easements. *See* Dkt. No. 29; *306 Wall Street Owners, LLC et al. v. City of Kingston et al.*, Index No. EF2026-618, Doc. No. 1 (N.Y. Sup. Ct. Ulster Cnty. 2026). The issues raised and relief sought in this action are dissimilar. Here, plaintiffs seek monetary damages for past violations of their constitutional rights. *See generally*, Compl. Because plaintiffs' quiet title action is not a parallel proceeding, the *Colorado River* abstention doctrine does not apply.

It is a closer call with respect to plaintiffs' earlier-filed negligence and breach-of-contract action. In that action, plaintiffs assert state-law negligence and breach-of-contract claims arising out of the City's allegedly negligent maintenance of the Canopy in the years preceding the demolition and the City's alleged failure to maintain the Canopy as required under the Easements. *306 Wall Street Owners et al. v. City of Kingston*, Index No. EF2025-691, Doc. No. 1 (N.Y. Sup. Ct. 2025). In this action, plaintiffs assert § 1983 claims for alleged violations of

their federal and state constitutional rights arising out of defendants' demolition of the Canopy. Compl. ¶¶ 97–178. Both actions seek retrospective relief for the City's past conduct as it relates to the Canopy, but plaintiffs' negligence and breach-of-contract action in state court asserts exclusively state-law claims predicated on a temporally distinct set of facts. In all, plaintiffs' earlier-filed action is not parallel to this action and, accordingly, *Colorado River* abstention does not apply.

But even if, as defendants assume, plaintiffs' earlier-filed action could be considered a parallel proceeding, that conclusion would not end the inquiry. Once a court determines that a state court action is "parallel" to a federal action, the court must weigh the following six factors to determine whether abstention is warranted under *Colorado River*:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Niagara Mohawk Power Corp.*, 673 F.3d at 100–01 (citing *Woodford*, 239 F.3d at 522).

"[T]he decision whether to dismiss a federal action because of parallel state-court litigation" requires "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). "Thus, the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Woodford*, 239 F.3d at 522. "Only the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 818–19.

The first factor, *i.e.*, whether the controversy involves a *res* over which one of the courts has assumed jurisdiction, weighs against abstention. This factor is primarily concerned "with

avoiding the generation of additional litigation through permitting inconsistent dispositions of property." *Colorado River*, 424 U.S. at 819.  Here, no such risks exist because both actions demand retrospective relief for defendants' alleged past conduct, and neither contemplate the disposition of property.

The second factor, concerning the relative inconvenience of litigating in the federal forum, also weighs against abstention.  Certainly Ulster County Supreme Court, "located a few hundred feet from plaintiffs' buildings" and within walking distance of City Hall, is a more convenient forum than the federal courthouse in Utica, New York.  Defs.' Mem. at 19.  But "[w]hen considering the factor of forum inconvenience the question is not the convenience of the state forum, but the inconvenience of the federal forum." *Dobzeniecki v. Stone & Webster Eng'g Corp.*, 716 F. Supp. 87, 90 (E.D.N.Y. 1989) (citing *Colorado River,* 424 U.S. at 818).

 "Where . . . dismissing the case would not result in a substantial net gain in convenience, this factor does not favor dismissal." *Sacody Techs., Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1158 (S.D.N.Y. 1994); *see also Great S. Bay Med. Care, P.C. v. Allstate Ins. Co.*, 204 F. Supp. 2d 492, 497 (E.D.N.Y. 2002) (holding that second factor weighed against abstention because although "one venue may be more convenient to a party, neither is significantly inconvenient").

Courts have found that this factor weighs against abstention where federal- and state-court actions are pending in the same district, or even the same state.  *Lasker v. UBS Sec. LLC*, 614 F. Supp. 2d 345, 356 (E.D.N.Y. 2008) (holding that second factor weighed against abstention where "both plaintiff and at least one of the defendants is present in New York"); *Yu v. Gao*, 2025 WL 80658, at *5 (E.D.N.Y. Jan. 13, 2025) (finding forums equally convenient where state and federal courts were located in the Eastern District of New York); *c.f. Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 476 (S.D.N.Y.2001) (finding federal forum

inconvenient where "witnesses and parties w[ould]be forced to travel back and forth between California and New York").

Although the state courthouse in Kingston, New York, may be more convenient for the parties, the federal forum is not significantly inconvenient, as defendants and plaintiffs' buildings are located in the Northern District of New York. Defs.' Mem. at 19. At best, this factor is neutral, weighing against abstention.

The third factor, *i.e.*, the risk of piecemeal litigation, also weighs against abstention. Defs.' Mem. at 19. The disposition of plaintiffs' state law negligence and breach of contract claims, arising out of the City's alleged failure to maintain the Canopy in the years preceding the demolition, would have no impact on the disposition of plaintiffs' constitutional claims in this action, which arise out of defendants' demolition of the Canopy. Because there is no risk of piecemeal litigation, this factor weighs in favor of the exercise of jurisdiction.

The fourth factor pertains to the order of filing and the progress of the federal- and state-court actions. This factor "does not turn exclusively on the sequence in which the cases were filed, 'but rather in terms of how much progress has been made in the two actions.'" *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp., 460 U.S. at 21*). Plaintiffs' state court negligence and breach-of-contract action was filed seven months before this action and has proceeded past the motion to dismiss stage[5] and into discovery. *306 Wall Street Owners et al. v. The City of Kingston*, Index No. EF2025-691 (N.Y. Sup. Ct. 2025). This action is at the motion-to-dismiss stage. Dkt. Nos. 19–20. In other words, plaintiffs' state-court negligence and breach-of-contract action has progressed further than their

---

[5] The City moved to dismiss the complaint, and the trial court granted the motion in part and denied it in part. *306 Wall Street Owners et al. v. The City of Kingston*, Index No. EF2025-691, Doc. Nos. 21–22, 41 (N.Y. Sup. Ct. 2025). The City appealed the partial denial, *id.* Doc. No. 48, and that appeal remains pending before the Appellate Division, *306 Wall Street Owners, LLC et al. v. The City of Kingston*, CV-25-1711 (3d Dep't 2025).

federal action, but not by much.  Accordingly, the fourth factor weighs slightly, if at all, in favor of abstention.

The fifth factor, which considers "what law—state, federal, or foreign—provides the rule of decision in the case," weighs against abstention.  *Niagara Mohawk Power Corp.*, 673 F.3d at 102.  The Second Circuit has "stated that '[w]hen the applicable substantive law is federal, abstention is disfavored.'"  *Vill. of Westfield*, 170 F.3d at 124 (quoting *De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989)).  "[E]ven 'the *absence* of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex."  *Niagara Mohawk Power Corp.*, 673 F.3d at 102 (quoting *Vill. of Westfield,* 170 F.3d at 123–24).  In this action, plaintiffs primarily assert federal constitutional claims, their state-law claims arise under parallel provisions of the New York State Constitution, and none of plaintiffs' claims raise any novel or complex issues of state law.  *See* Compl. ¶¶ 97–178.

Lastly, the sixth factor concerns whether state-court procedures can adequately protect the parties' federal rights.  *See Niagara Mohawk Power Corp.*, 673 F.3d at 103.  Although plaintiffs could assert § 1983 claims in their state-court negligence and breach-of-contract action, "the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action."  *Bethlehem Contracting Co.*, 800 F.2d at 328.  And the Second Circuit has consistently "held that this factor is significant only if it militates in favor of federal jurisdiction."  *Zemsky v. City of New York*, 821 F.2d 148, 153 (2d Cir. 1987) (citing *id.*).  Consequently, the Court finds this factor neutral, weighing against abstention.

In all, the balance of the relevant factors has not revealed the kind of "exceptional circumstances" that would counsel the Court to abandon its "virtually unflagging obligation" to

exercise its jurisdiction over plaintiffs' claims. Accordingly, defendants' motion to dismiss is denied on this ground.

## 2. Rule 12(b)(6)

Defendants' remaining arguments for dismissal—*res judicata*, collateral estoppel, and plausibility—concern the legal cognizability of plaintiffs' claims and the sufficiency of plaintiffs' allegations. Defs.' Mem. at 15–18, 20–23. Accordingly, Rule 12(b)(6) applies. *See Crum v. Dodrill*, 562 F. Supp. 2d 366, 371 (N.D.N.Y. 2008) (explaining that Rule 12(b)(6) is the vehicle for raising "(1) a challenge to the 'sufficiency of the pleading' under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim[s]"); *see also Cohen v. Touro Coll.*, 162 F.3d 1147 (2d Cir. 1998) (affirming 12(b)(6) dismissal on *res judicata* and collateral estoppel grounds); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) (holding that a court may consider a *res judicata* defense on a 12(b)(6) motion to dismiss).

Under Rule 12(b)(6), a party may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) ("[T]he '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).   In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).   As relevant here, "[a] court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings."  *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021) (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)).

### i.   Res Judicata

First, defendants argue that the doctrine of *res judicata* bars plaintiffs' claims because they arise from the same harm as claims previously litigated in their putative class action in state court.  Defs.' Mem. at 15–17.  Plaintiffs maintain that *res judicata* does not bar any of the claims they assert in this action.  Pls.' Reply at 28–29.

"Federal courts are required 'to give preclusive effect to state-court judgments whenever the courts of the [s]tate from which the judgments emerged would do so.'"  *VDARE Found., Inc. v. James*, 162 F.4th 77, 83 (2d Cir. 2025) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)).  Because the City asserts claim preclusion with respect to a prior state-court judgment, *see* Defs.' Mem. at 16, New York law determines the preclusive effect of the judgment.

"'Under both New York law and federal law, the doctrine of *res judicata,* or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.'"  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195–96 (2d Cir. 2010) (quoting *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir. 1997)) (internal quotation omitted).

- 23 -

Defendants' claim preclusion defense is predicated on the claims litigated in plaintiffs' putative class action in state court. Recall that on August 19, 2024, all plaintiffs except Gottlieb filed a putative class action against the City in New York State Supreme Court, Ulster County. *See 306 Wall Street Owners, LLC, et al. v. The City of Kingston*, Index No. EF 2024-2258, Doc. No. 1 (N.Y. Sup. Ct. 2024) ("Class Action Compl.").

Plaintiffs' class action complaint asserted two claims: (1) a claim for a judgment declaring the Canopy a permanent fixture to plaintiffs' properties; and (2) a claim to enjoin the City from altering or removing the Canopy until the City complied with a local law requiring the City to obtain a certificate of recommendation from the City's Historic Landmarks Preservation Commission before it made any exterior alterations to the Stockade District. *Id.* ¶¶ 70–95.

The City moved to dismiss the class action complaint and the trial court granted the City's motion, dismissing both claims. *See 306 Wall Street Owners, LLC, et al. v. The City of Kingston*, Index No. EF 2024-2258, Doc. Nos. 53–54, 89 (N.Y. Sup. Ct 2024). Plaintiffs appealed the dismissal of their first claim, but the Appellate Division for the Third Department affirmed the dismissal. *See 306 Wall St. Owners, LLC*, 241 A.D.3d at 1697–98.

"New York employs a 'transactional' approach to claim preclusion, under which 'the claim preclusion rule extends beyond attempts to relitigate identical claims . . . [to] *all other claims arising out of the same transaction or series of transactions*.'" *Simmons*, 16 F.4th at 360 (quoting *Simmons v. Trans Express Inc.*, 170 N.E.3d 733, 736 (N.Y. 2021)) (emphasis in original). Claims arise out of the same transaction or series of transactions "where the same foundation facts serve as a predicate for each proceeding." *Reilly v. Reid*, 379 N.E.2d 172, 176 (N.Y. 1978). But a prior judgment will not preclude a party from asserting claims that arose from subsequent events. *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1160 (N.Y. 1981)

(holding that prior judgment did not preclude claims asserted in a subsequent action where those claims arose from later events); *UBS Sec. LLC v. Highland Cap. Mgmt., L.P.*, 159 A.D.3d 512, 513 (1st Dep't 2018) (holding that *res judicata* did not bar claims in subsequent proceeding where those claims were based on conduct that occurred after the commencement of the prior proceeding); *Roosevelt Lee 38 LLC v. Born Star Am. Corp.*, 235 A.D.3d 458, 459 (1st Dep't 2025) (same); *Cohen v. Bd. of Ed. of E. Ramapo Cent. Sch. Dist.*, 84 A.D.2d 536, 537 (2d Dep't 1981) (same).

Although this action, like plaintiffs' putative class action, relates broadly to the Canopy, the claims plaintiffs assert in this action—for violations of their First, Fifth, and Fourteenth Amendment rights—arise from subsequent events and, accordingly, are not barred by *res judicata*.  A brief review of each claim confirms that validity of that conclusion.

First, plaintiffs' Fifth Amendment takings and inverse condemnation claims allege that the demolition of the Canopy amounts to an uncompensated taking.  Compl. ¶¶ 97–115, 175–78. These claims could not have been brought in the prior action because that action was filed over a year before the demolition of the Canopy.  *See* Class Action Compl. ¶¶ 45–47 (stating that the common council had not yet authorized a bond to procure the removal of the Canopy).

Second, plaintiffs' "class of one" equal protection claim alleges that defendants refused to offer plaintiffs compensation comparable to that offered to similarly situated property owners. Compl. ¶¶ 116–32.  This claim could not have been raised in plaintiffs' putative class action because the events underlying it occurred months after plaintiffs filed their putative class action. *See* Compl. ¶¶ 84, 116–32 (alleging that differential treatment was established in December 2025); *see also id.*, Exh. 5 (City's settlement with 300 Wall Street owner, dated May 2025).

Third, plaintiffs' First Amendment retaliation claim alleges that defendants implemented and accelerated a plan to demolish the Canopy to retaliate against plaintiffs for their pursuit of legal remedies.  Compl. ¶¶ 133–51.  This claim could not have been asserted in plaintiffs' putative class action because much of the alleged retaliation occurred after plaintiffs' class action complaint was filed.  Compl. ¶¶ 8, 23–24 (alleging plaintiffs' pursuit of legal remedies and defendants' retaliatory conduct in February and March of 2025), 44 (alleging retaliatory conduct in March and April of 2025).

Fourth, plaintiffs' substantive due process claims allege that defendants deprived plaintiffs of a constitutionally protected property interest by enacting legislation that authorized the demolition.  Compl. ¶¶ 23, 152–74.  These claims could not have been raised in the plaintiffs' earlier class action because they are based on funding resolutions that were adopted after plaintiffs' class action complaint was dismissed by the trial court.  Compl. ¶¶ 23–24.

In sum, at this early stage in the litigation, defendants have not demonstrated that plaintiffs' putative class action[6] precludes plaintiffs from asserting any of the claims raised in this action.  Accordingly, defendants' motion to dismiss plaintiffs' complaint on *res judicata* grounds must be denied.

---

[6] To the extent defendants argue that plaintiffs' consolidated Article 78 proceeding bars any of plaintiffs' claims in this action, that argument fails.  Under New York Law, "claim preclusion will not apply 'if the initial forum did not have the power to award the full measure of relief sought in the later litigation.'"  *Whitfield v. City of N.Y.*, 96 F.4th 504, 523 (2d Cir. 2024) (quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986)).  In a "pure" Article 78 proceeding, "the court may not award damages other than those 'incidental to the primary relief sought.'"  *Whitfield*, 96 F.4th at 520 (quoting N.Y. C.P.L.R. 7806).  This means that, ordinarily, a state court may not award damages pursuant to § 1983 for civil rights violations alleged in an Article 78 petition.  *Davidson*, 792 F.2d 275, 279 (2d Cir. 1986).

There are exceptions to this rule.  As the Second Circuit has explained, state courts have recognized procedural mechanisms through which a state court may address claims that fall outside the scope of Article 78 review in an Article 78 proceeding.  *Whitfield*, 96 F.4th at 520–23.  But those mechanisms were not utilized in plaintiffs' consolidated Article 78 proceeding because plaintiffs did not assert or attempt to assert any § 1983 claims for damages.  Because plaintiffs' consolidated Article 78 proceeding remained a "pure" Article 78 proceeding, it has no preclusive effect with respect to their § 1983 claims for damages.

### ii. Collateral Estoppel

Next, defendants contend that collateral estoppel bars plaintiffs from relitigating issues related to the adequacy of funding resolutions and the Common Council's SEQRA determination because those issues were decided against them in their earlier state-court proceedings.  Defs.' Mem. at 17–18.  Plaintiffs maintain that none of their claims should be dismissed on this basis because the issues raised in this action are distinct from those decided against them in earlier proceedings.  Pls.' Reply at 29–30.

New York law on collateral estoppel governs the Court's analysis because defendants' collateral estoppel defense is predicated on issues previously decided in plaintiffs' putative class action and plaintiffs' consolidated Article 78 proceeding, both of which were litigated in New York State Supreme Court.  *See* Defs.' Mem. at 17; *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (applying New York law where party raised estoppel defense to preclude re-litigation of issues decided in earlier New York State Supreme Court proceeding).

"'Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action.'"  *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (quoting *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021)).

In plaintiffs' putative class action, the issues decided against plaintiffs concerned ownership of the Canopy and whether the Canopy was a permanent fixture.[7] *See 306 Wall St. Owners, LLC*, 241 A.D.3d at 1694–98.  In the consolidated Article 78 proceeding, the following issues were decided against plaintiffs: (1) the adequacy of the Common Council's SEQRA review; (2) whether the Common Council's Finance and Audit Committee privately deliberated the funding resolutions in violation of New York State Open Meetings Law; (3) whether defendants violated provisions of the City's charter relating to budget procedures when they adopted the second funding resolution; and (4) whether the second funding resolution rendered the earlier funding resolution and bond solicitation fraudulent.[8] *306 Wall Street Owners et al. v. City of Kingston et al.*, Index No. EF2025-723, Doc. Nos. 61, 82 (N.Y. Sup. Ct. 2025).

The Court agrees with defendants that plaintiffs are collaterally estopped from re-litigating issues decided against them in earlier proceedings.  For example, plaintiffs are precluded from re-litigating ownership of the Canopy, because that issue was conclusively decided against them in their putative class action.  *See 306 Wall St. Owners, LLC*, 241 A.D.3d at 1698 (declaring that the Canopy is owned by the City).  But that does not mean that the Court must dismiss plaintiffs' civil rights complaint on that basis.  Indeed, dismissal is only required where an issue decided in a prior action is identical to an issue raised in this action, and that issue is dispositive of one or more of plaintiffs' claims.

---

[7] In that case, plaintiffs' second cause of action, which sought to enjoin the City from proceeding with the demolition until it complied with local law requirements, was dismissed by the trial court as abandoned because the City had repealed the local law at issue during the pendency of the action.  *See 306 Wall Street Owners, LLC, et al. v. The City of Kingston*, Index No. EF 2024-2258, Doc. No. 89 (N.Y. Sup. Ct Ulster Cnty. 2024).

[8] The trial court in plaintiffs' consolidated Article 78 proceeding also rejected claims that the Common Council's Finance and Audit Committee prematurely recommended approval of the funding resolutions.  But those claims were dismissed after the trial court found that the challenged recommendations were non-final determinations and, thus, unreviewable under Article 78.  *306 Wall Street Owners et al. v. City of Kingston et al.*, Index No. EF2025-723, Doc. No. 61 (N.Y. Sup. Ct. Ulster Cnty. 2025).  Because the trial court did not reach the merits of plaintiffs' challenges to the recommendations, plaintiffs are not collaterally estopped from relitigating those issues.

Defendants bear the burden of establishing an identity of issues. *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985) ("The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination."). And at this early stage, defendants have not carried their burden.

Defendants have not shown that any of the issues decided against plaintiffs in prior state-court proceedings will necessarily dispose of any of plaintiffs' claims in this action. Plaintiffs' claims in this action raise the following issues: (1) whether damage caused by the demolition of the Canopy amounted to an uncompensated taking of plaintiffs' properties, Compl. ¶¶ 97–115; (2) whether plaintiffs were treated differently than other similarly situated property owners with respect to settlement offers, *id.* ¶¶ 84, 116–32; (3) whether the demolition of the Canopy was undertaken in retaliation for plaintiffs' protected activity, *id.* ¶¶ 8, 23–24, 133–51; and (4) whether defendants' legislative enactments authorizing the demolition deprived plaintiffs of constitutionally protected property interests, *id.* ¶¶ 23, 152–74.

None of these issues were raised or decided in any of plaintiffs' prior proceedings, in part, because plaintiffs' claims largely concern the constitutionality of events that occurred after plaintiffs brought their earlier proceedings—*i.e.*, the demolition of the Canopy and defendants' settlement offers to other affected property owners. Although plaintiffs' substantive due process claims concern the same funding resolutions challenged in their consolidated Article 78 proceeding, the issues decided in plaintiffs' Article 78 petitions concerned only the adequacy of the Common Council's SEQRA review and whether defendants complied with state and local procedures in passing the funding resolutions. *See 306 Wall Street Owners et al. v. City of Kingston et al.*, Index No. EF2025-723, Doc. No. 61 (N.Y. Sup. Ct. 2025).

Crucially, plaintiffs did not litigate whether the funding resolutions deprived plaintiffs of constitutionally protected property interests.  In sum, defendants have not carried their burden of demonstrating that the issues decided against plaintiffs in prior proceedings dispose of any of the claims alleged in their complaint.  Accordingly, defendants' motion to dismiss on this ground must be denied.

### iii. Plausibility

Finally, defendants argue that plaintiffs have not plausibly alleged their § 1983 claims. Defs.' Mem. at 20–23.  Plaintiffs disagree.  Pls.' Reply at 16–26.

### a. Fifth Amendment Takings Claim

First, defendants argue that plaintiffs' takings claim fails to state a plausible claim for relief because the demolition described in the complaint does not amount to a permanent physical occupation and, regardless, the City owns the Canopy.  Defs.' Mem. at 20.

This argument must be rejected because plaintiffs are not required to allege a permanent physical occupation of their property to state a plausible takings claim.  Indeed, the Supreme Court has long "rejected the argument that government action must be permanent to qualify as a taking." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 33 (2012).  "[T]emporary government action may give rise to a takings claim if permanent action of the same character would constitute a taking." *Id.* at 30.  And "[a] temporary takings claim could be maintained . . . when government action occurring outside [a] property g[i]ve[s] rise to 'a direct and immediate interference with the enjoyment and use of the [property].'" *Id.* at 33 (quoting *United States v. Causby,* 328 U.S. 256, 266 (1946)).

Plaintiffs have plausibly alleged that defendants' demolition of the Canopy, a structure that was "mechanically fastened to, embedded in, and structurally integrated into" their

buildings, gave rise to a direct and immediate interference with their buildings. Compl. ¶¶ 67, 70. Taken as true, plaintiffs' complaint has plausibly alleged that their building façades would be damaged as a result of the Canopy's removal, and that the demolition process itself would involve a temporary occupation of their properties that, if continued permanently, would amount to a taking. *Id.* ¶¶ 70–71.

The fact that the City owns the Canopy does not alter this conclusion. *See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 713 (2010) (explaining that a taking occurs "when the government uses its own property in such a way that it destroys private property"). And contrary to defendants' contention, plaintiffs are no longer required to seek compensation through state procedures before bringing their § 1983 takings claim. *See Knick v. Twp. of Scott, Pa.*, 588 U.S. 180, 206 (2019) (overruling the state-litigation requirement and holding that the "pursuit of a remedy in federal court need not await any subsequent state action"). In sum, at this early stage of the litigation, plaintiffs have plausibly alleged a Fifth Amendment takings claim.

### b.  First Amendment Retaliation Claim

Next, defendants contend that plaintiffs have failed to plausibly allege their First Amendment retaliation claim. Defs.' Mem. at 21. Plaintiffs maintain that their allegations, taken as true, state a plausible First Amendment retaliation claim. Pls.' Reply at 25–26.

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

Plaintiffs have plausibly alleged the first element of their retaliation claim, *i.e.*, that they exercised a right protected by the First Amendment. It is well settled that "[t]he rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (citing *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988)). Plaintiffs have plausibly alleged that they have sought judicial relief. Compl. ¶¶ 24, 43, 50.

Plaintiffs have also plausibly alleged the second element of their retaliation claim, which requires them to plead a nexus between the exercise of their First Amendment rights and defendants' allegedly retaliatory conduct. Plaintiffs claim that they began filing notices of claim with the City in November 2023 and that, beginning in 2024, defendants announced a plan to demolish the Canopy. Compl. ¶¶ 43–44. Plaintiffs further allege that Mayor Noble issued public press releases directly mentioning plaintiffs' protected activity and urging residents to contact plaintiffs and discourage them from initiating further litigation. *Id.* ¶¶ 46–47. Plaintiffs also allege that the resolutions and ordinances authorizing the demolition did not identify any imminent structural danger or emergency condition that necessitated the demolition of the Canopy. *Id.* ¶ 159. In sum, plaintiffs' complaint plausibly alleges sufficient non-conclusory facts from which it can be inferred that defendants initiated and proceeded with the demolition of the Canopy in retaliation for plaintiffs' protected activity.

Lastly, plaintiffs have plausibly alleged the third element—*i.e.*, that defendants' conduct caused them to suffer an injury. Ordinarily, to establish this element, a plaintiff must allege "that his First Amendment rights were 'actually chilled.'" *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). But in some limited contexts "other forms of harm have been accepted in place of this 'actual chilling' requirement." *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011).

These limited contexts include situations where a plaintiff has alleged non-speech injuries, such as the revocation of a building permit or the non-enforcement of zoning laws. *Id.* (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002); *see also Gagliardi*, 18 F.3d at 195. Plaintiffs have plausibly alleged that their buildings will be damaged as a result of defendants' removal of the Canopy from their buildings. Compl. ¶¶ 67–70.

Accordingly, because plaintiffs' complaint plausibly alleges each element of their First Amendment retaliation claim, defendants' motion to dismiss this claim must be denied.

### c. Fourteenth Amendment Equal Protection Claim

Third, defendants argue that plaintiffs' complaint fails to state a plausible "class of one" equal protection claim. Defs.' Mem. at 21. In opposition, plaintiffs maintain that they have plausibly alleged that they were treated differently than similarly situated property owners. Pls.' Reply at 19–24.

"In *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), the Supreme Court recognized that plaintiffs state an equal protection claim where they allege that they were intentionally treated differently from other similarly-situated individuals without any rational basis." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). As the Second Circuit has explained:

> Where a class-of-one theory is available, the plaintiff must allege "that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate governmental policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."

*Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (quoting *Clubside, Inc.*, 468 F.3d at 144) (internal quotation omitted).

Plaintiffs allege that they were treated differently than other similarly situated property owners when defendants offered to compensate other affected property owners for damages caused by the demolition, but did not offer plaintiffs comparable compensation.  Compl. ¶¶ 116–32.  These allegations satisfy the first element of their "class of one" claim, because they have identified a group of similarly situated comparators—other property owners whose buildings were connected to the Canopy.  Compl. ¶ 128.

But plaintiffs' complaint does not plausibly allege the second element: that plaintiffs were treated differently than the similarly situated property owners.  On the contrary, plaintiffs' complaint alleges that defendants sent a letter to plaintiffs and other property owners stating that "the City intend[ed] to schedule Pike Plan demolition 'after January 1st, 2026' and [sought] to 'offer a legal settlement agreement' modeled on one previously used at another Wall Street property."  *Id.* ¶ 84.  Because plaintiffs allege that defendants offered plaintiffs and other similarly situated property owners a settlement agreement modeled on one previously offered to another affected property owner, they have not alleged the disparate treatment necessary to state a plausible "class of one" equal protection claim.  Consequently, that claim must be dismissed.

### d.  Fourteenth Amendment Substantive Due Process

Lastly, defendants argue that plaintiffs' Fourteenth Amendment substantive due process claim must be dismissed because plaintiffs have not alleged governmental action that "shocks the conscience."  Defs.' Mem. at 22.  Plaintiffs have not directly opposed this portion of defendants' motion.  *See generally*, Pls.' Reply.

The Court agrees with defendants that plaintiffs' Fourteenth Amendment substantive due process claim must be dismissed, but for a different reason.  Where "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of

government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Stop the Beach Renourishment, Inc.*, 560 U.S. at 721 (internal quotations omitted).

In support of their substantive due process claim, plaintiffs allege that defendants deprived them of a constitutionally protected property interest by authorizing the demolition of the Canopy.  Compl. ¶¶ 152–66.  The Takings clause of the Fifth Amendment provides an explicit textual source of protection against this alleged conduct.  Because substantive due process cannot "do the work of the Takings Clause," *Stop the Beach Renourishment, Inc.*, 560 U.S. at 721, plaintiffs' Fourteenth Amendment substantive due process claim must be dismissed.

## IV.    CONCLUSION

Therefore, it is

**ORDERED** that

1.  Plaintiffs' motion for a preliminary injunction is **DENIED** as moot;

2.  Defendants' motion to dismiss is **GRANTED**, in part, **DENIED**, in part; and

3.  Plaintiffs' § 1983 Equal Protection and Substantive Due Process claims are dismissed, pursuant to Rule 12(b)(6).

The Clerk of the Court is directed to:

a.  Terminate the pending motions (Dkt. Nos. 10 & 20).

**IT IS SO ORDERED.**

Dated:  May 8, 2026
      Utica, New York.

Anthony J. Brindisi
U.S. District Judge